**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

IN RE:
Christine A. Holland                                    CASE NO. 13-33528-HCD
                                                        CHAPTER 13
Debtor

## MOTION TO APPROVE MORTGAGE LOAN MODIFICATION

Comes now the Debtor, by counsel, the Chapter 13 Trustee and Green Tree Servicing LLC, ("Creditor"), by counsel and move the Court for an order approving a mortgage loan modification between the Debtor and Creditor and in support of its motion states as follows:

1. Creditor is the holder of a secured claim against the Debtor's real estate located at 13840 Ranier Drive, Middlebury, IN 46540-8786.

2. The Debtor's Chapter 13 Plan calls for the Debtor to retain the real estate and pay Creditor on its secured claim.

3. Since the Debtor filed their petition on December 18, 2013, the Debtor has been approved for a loan modification agreement by Creditor.

4. The loan modification agreement materially alters the terms of repaying the mortgage debt to Creditor. A copy of the loan modification agreement is attached as Exhibit A.

5. The agreement adjusts the monthly payment of principal and interest on the loan to $994.27 per month. In addition, the loan contains a monthly escrow payment which may change from month to month. The loan modification also modifies other terms of repayment of the original debt instrument(s).

6. If the loan modification agreement is approved by the Court as tendered, the modified repayment terms shall not adversely impact or alter the repayment of any other creditors provided for under the Chapter 13 Plan.

7. The parties further stipulate that if the loan modification agreement is approved by the Court as filed, Creditor need not file an amended proof of claim to reflect the terms of the loan modification agreement as the agreement is a post-petition modification of the debt. The Debtor and Trustee shall pay per the loan modification agreement and the Trustee shall cease payment of any unpaid mortgage arrearage provided for under the Chapter 13 Plan.

8. The loan modification agreement has an effective date of August 1, 2014 and the Trustee released payments on the pre-petition arrearage claim after that date. As such, Green Tree is holding excess funds on the account. Green Tree agrees to tender $9,244.25 to the Chapter 13 Trustee within 30 days from the date the Court enters the order approving the loan modification. After tendering $9,244.25 to the Chapter 13 Trustee, Green Tree's loan shall be due for the June 1, 2015 due date.

WHEREFORE, the Debtor, the Chapter 13 Trustee and Green Tree Servicing LLC respectfully requests that the Court approve the attached loan modification agreement and for any and for all other just and proper relief in the premises.

REVIEWED AND APPROVED:

| /s/ Jason R. Allen    May 27, 2015 | /s/ Michael J. Kulak    May 27, 2015 |
|---|---|
| Jason Allen    Date | Michael J. Kulak    Date |
| Attorney for Debtor | Attorney for Creditor |
| Jason Allen Law LLC | Unterberg & Associates, P.C. |
| 77 West Washington Street, Suite 515 | 8050 Cleveland Place |
| Chicago, IL  60602 | Merrillville, IN  46410 |
| 312-546-4264 | (219) 736-5579 |
| notices@lawsolutionsbk.com | bankruptcy@unterlaw.com |
| | Atty File: 1016903 |

/s/ Debra L. Miller    May 18, 2015
Debra L. Miller    Date
Chapter 13 Trustee
100 E. Wayne St.  Suite 465
P.O. Box 11550
South Bend, IN  46634-0550
574-251-1493
dmecf@trustee13.com

## CERTIFICATE OF SERVICE

I certify that on May 27, 2015, a copy of the attached was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Jason Allen; notices@lawsolutionsbk.com
Debra L. Miller; dmecf@trustee13.com
United States Trustee, N.D., IN; ustpregion10.so.ecf@usdoj.gov

Attorneys for Creditor

By: _____
Michael J. Kulak    21347-53

Unterberg & Associates, P.C.
8050 Cleveland Place
Merrillville, IN 46410
(219) 736-5579
bankruptcy@unterlaw.com
Atty File: 1016903

Investor Loan # 

When Recorded Return To:
Green Tree Servicing LLC
7360 South Kyrene Road
Tempe, AZ 85283

This document was prepared by Green Tree Servicing LLC

_____ [SPACE ABOVE THIS LINE FOR RECORDING DATA] _____

 **LOAN MODIFICATION AGREEMENT** FROM IMORT/JM

**THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOUR LOAN WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, GREEN TREE IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DISCHARGED DEBT AS YOUR PERSONAL LIABILITY. Monday - Friday 7 a.m. to 8 p.m., and Saturday 7 a.m. to 1 p.m. CST**

This Loan Modification Agreement ("Agreement"), made between CHRISTINE HOLLAND ("Borrower") and Green Tree Servicing LLC ("Lender"), amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 11/09/2006 and recorded 11/29/2006 Instrument No. 2006 35035
, County Recorder Records of Elkhart County, IN and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

13840 RANIER DR
MIDDLEBURY, IN 46540

**ORIGINAL**

the real property described in the above-referenced Security Instrument.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 08/01/2014, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $217,266.04 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.62500%, from 08/01/2014. Borrower promises to make monthly payments of principal and interest of U.S. $994.27, beginning on the 09/01/2014, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.62500% will remain in effect until principal and interest are paid in full. The new monthly payment amount does not include any amounts owed for escrow. Borrower may refer to the monthly billing statement for the escrow amount owed. If on 08/01/2054 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower's payment schedule for the modified Loan is as follows:

REDACTED

LOAN MODIFICATION AGREEMENT -Single Family- Fannie Mae UNIFORM INSTRUMENT            Form 3178  1/01(rev. 01/09)



REDACTED

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|
| 1-40 | 4.625% | 08/01/2014 | $994.27 | 09/01/2014 | 480 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

REDACTED

x

REDACTED

4. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

In Witness Whereof, the Lender and I have executed this Agreement.

Green Tree Servicing, LLC
Lender

By: _Susanne F. Roman_
    Licensed Loss Mitigation Specialist

Date: AUG 15 2014

_Christine Holland_
Christine Holland
Date: 8/11/2014

Account#: ███████

_____ [SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT] _____

LOAN MODIFICATION AGREEMENT -Single Family- Fannie Mae UNIFORM INSTRUMENT                    Form 3179  1/01(rev. 01/09)

REDACTED

STATE OF: INDIANA        )
                                          SS:
COUNTY OF                    )

Before me, a Notary Public in and for said County and State, personally appeared

Christine Holland

who acknowledged the execution of the foregoing Mortgage, and who, having been duly sworn, stated that any representations therein contained are true.

Witness my hand and Notarial Seal this 11th day of August, 2014.

_____
(Signature)

_____Sheena Scott_____
(Printed Name) Notary Public

My Commission Expires: Sept. 29, 2021    County of Residence: Elkhart



SHEENA M. SCOTT
Notary Public, State of Indiana
Elkhart County
Commission # 647896
My Commission Expires
September 29, 2021

## LEGAL DESCRIPTION- EXHIBIT "A"

Lot Number Thirty-one (31) as the said Lot is known and designated on the recorded Plat of The Summit, Section Five; said plat being recorded in Plat Book 29, page 51, in the Office of the Recorder of Elkhart County, Indiana; and

SUBJECT TO covenants, restrictions and easements of record; and

BEING the same property conveyed to Christine A. Holland, by Warranty Deed dated August 27, 2005 and recorded August 29, 2005 in Inst. No. 2005-27506, office aforesaid; and

THEREAFTER BEING the same property conveyed to Team Construction Co. Inc., by Quit-Claim Deed dated September 22, 2005 and recorded September 23, 2005 in Inst. No. 2005-30524, office aforesaid; and

THEREAFTER BEING the same property conveyed to Christine Holland, by Corporate Warranty Deed dated March 15, 2006 and recorded March 22, 2006 in Inst. No. 2006-07777, office aforesaid.

STATE OF Arizona

County of Maricopa

The foregoing instrument was acknowledged before me on this day of __AUG 1 5 2014__,
by <u>Susanne F. Roman</u> of Green Tree Servicing I I C a corporation, on behalf of the corporation.

_____

Notary Public

> Julie A. Butler
> Notary Public
> Maricopa County, Arizona
> My Comm. Expires 08-17-15